20 CV 4879 (BMC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DEWAYNE MCQUEEN, Individually and On behalf of a Class of All Others Similarly Situated, and RAY CEDENO, Individually and On behalf of a Class of All Others Similarly Situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE COMMISSIONER DERMOT SHEA, Individually and in his Official Capacity, Police Officer Peter Ruotolo, Individually and in his Official Capacity, Police Officer Omar Eltabib, Individually and in his Official Capacity, and NEW YORK CITY POLICE OFFICERS JOHN AND JANE DOES,

Defendants.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION BE DENIED**

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, N.Y.  10007

Of Counsel:  Mark G. Toews
Tel:  (212) 356-0871
Matter No. 2020-036733

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

RELEVANT FACTS AND PROCEDURAL POSTURE ............................................. 3

STANDARD OF REVIEW ......................................................................................... 4

FRCP 12(b)(1), 12(b)(6), and 12(c) ......................................................................... 4

FRCP 23 ...................................................................................................................... 6

ARGUMENT

      POINT I

           PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE BOTH PLAINTIFFS WERE CHARGED WITH VTL 1192(3), FOR WHICH ARREST AND DETENTION UP-TO AND UNTIL ARRAIGNMENT IS IN ALL RESPECTS LEGAL AND PROPER. ....................................................... 7

           A.    The Criminal Procedure Law is Unambiguous by its Plain Terms that Certain Offenses are Exempted from the DAT Requirement. ............................................... 7

           B.    New York's Vehicle & Traffic Law classifies § 1192(3) as a misdemeanor for which the court may suspend or revoke a license. ................................................................. 9

           C.    New York state and federal case law recognizes DWI under 1192(3) as a crime. ................................. 11

           D.    The legislature intended to make 1192(3) DWI a crime for which the court may suspend or revoke a driver's license. ............................................. 12

                  1.    When considered together, the plain meaning of § 1192 and § 1193 is unambiguous. ..................................... 12

**Page**

    2.    Section 1192's legislative history corroborates § 1192(3)'s plain meaning..................................................................14

POINT II

PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE PLAINTIFFS LACK STANDING AND THEREFORE CANNOT SERVE AS ADEQUATE CLASS REPRESENTATIVES...........................................................19

POINT III

DEFENDANTS RUOTOLO AND ELTABIB ARE ENTITLED TO QUALIFIED IMMUNITY................................21

POINT IV

DEFENDANT NYPD COMMISSIONER DERMOT SHEA HAD NO PERSONAL INVOLVEMENT IN THE ALLEGED VIOLATIONS. ......................................................................22

CONCLUSION.............................................................................. 24

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*Adarand Constructors, Inc. v. Pena*,
   515 U.S. 200 (1995)..................................................................................... 19-20

*Matter of Albany Law School v. N.Y. State Off. of Mental Retardation & Dev.*
   *Disabilities*,
   19 N.Y.3d 106 (2012) ...................................................................................14

*Ambrose v. City of New York*,
   623 F. Supp. 2d 454 (S.D.N.Y. 2009).............................................................5

*Amore v Novarro*,
   624 F3d 522 (2d Cir 2010).............................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................4, 5

*Blum v. Yaretsky*,
   457 U.S. 991 (1982).....................................................................................19

*Caridad v. Metro-North Commuter R.R.*,
   191 F.3d 283 (2d Cir. 1999),
   *abrogated in part on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006)........................6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)............................................................................5

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)............................................................................5

*Dove v. Fordham Univ.*,
   56 F. Supp. 2d 330 (S.D.N.Y. 1999)..............................................................23

*East Tex. Motor Freight Sys. v. Rodriguez*,
   431 U.S. 395 (1977).....................................................................................19

*Edmonds v. Greiner*,
   2002 U.S. Dist. LEXIS 3746 (S.D.N.Y. Mar. 7, 2002) .......................................23

*Gen. Tel. Co. of the Nw. v. EEOC*,
   446 U.S. 318 (1980).......................................................................................6

**<u>Cases</u>**                                                                                    **<u>Pages</u>**

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................................6

*Gill v. Mooney*,
    824 F.2d 192 (2d Cir. 1987)...............................................................................23

*Golden v. Zwickler*,
    394 U.S. 103 (1969).............................................................................................20

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982).............................................................................................21

*Harper v. City of New York*,
    424 F. App'x 36 (2d Cir. 2011) ............................................................................4

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*,
    767 F. App'x 123 (2d Cir. 2019) .........................................................................5

*Hernandez v. Keane*,
    341 F.3d 137 (2d Cir. 2003)...............................................................................22

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013)..................................................................................4

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)...................................................................................6

*Jefferson v. Kelly*,
    06 CV 6616 (NGG) (LB), 2008 U.S. Dist. LEXIS 32954
    (E.D.N.Y. Apr. 21, 2008)...................................................................................23

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006).................................................................................5

*L.A. v. Lyons*,
    461 U.S. 95 (1983)...............................................................................................20

*LaMagna v. Brown*,
    474 F. App'x 788 (2d Cir. 2012) .........................................................................5

*Lennon v. Miller*,
    66 F.3d 416 (2d Cir. 1995)................................................................................21

*Lewis v Casey*,
    518 U.S. 343 (1996)............................................................................................19

iv

**Cases**                                                                    **Pages**

*Littlejohn v. City of N.Y.*,
   795 F.3d 297 (2d Cir. 2015) ................................................................4

*Livermore v. City of New York*,
   08-CV-4442, 2011 U.S. Dist. LEXIS 4763 (S.D.N.Y. Jan. 13, 2011) ....................5

*Majewski v. Broadalbin-Perth Cent. School Dist.*,
   91 N.Y.2d 577 (1998) ............................................................12

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) .......................................................4

*Malley v. Briggs*,
   475 U.S. 335 (1986) ..............................................................21

*Martens v. Thomann*,
   273 F.3d 159 (2d Cir. 2001) .......................................................20

*McCoy v. Goord*,
   255 F. Supp. 2d 233 (S.D.N.Y. 2003) .............................................23

*McNeill v. New York City Housing Authority*,
   719 F. Supp. 233 (S.D.N.Y. 1989) .................................................6

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999) .......................................................4

*Matter of New York County Lawyers' Assn. v Bloomberg*,
   19 N.Y.3d 712 (2012) ............................................................12

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ..............................................................20

*People v. Argyris*,
   24 N.Y.3d 1138 (2014) ...........................................................14

*People v. Busby*,
   175 Misc. 2d 509 (2d Dept. 1997) ................................................14

*People v. Carvalho*,
   174 A.D.2d 687 (2d Dep't 1991) ..................................................10

*People v. Cruz*,
   48 N.Y.2d 419 (1979) ..................................................10, 14, 15, 17

**Cases**                                                                 **Pages**

*People v. Gerstner*,
    168 Misc. 2d 495 (Sup Ct. Monroe Cty. 1996) .................................................14

*People v. Grinberg*,
    4 Misc. 3d 670 (Kings Cty. Crim. Ct. 2004)..................................................18

*People v. Kapsuris*,
    89 Misc. 2d 634 (Cty. Ct. Erie Cty. 1976) ....................................................11

*People v. Litto*,
    8 N.Y.3d 692 (2007) ...................................................................11, 14, 15, 16, 17

*People v McKenzie*,
    52 Misc 3d 1217[A], 2016 NY Slip Op 51187[U]
    (Crim Ct. Kings County 2016)....................................................................10

*People v. Miller*,
    199 A.D.2d 692 (3rd Dep't 1993),
    *appeal denied* 82 N.Y.2d 92 ..................................................................12

*People v Rudd*,
    41 A.D.2d 875 (3d Dep't 1973) ................................................................10

*In re Plante*,
    7 A.D.3d 98 (2d Dept. 2004) ....................................................................14

*Pub. Emples. Ret. Sys. v. Merrill Lynch & Co.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010)........................................................19

*Roffman v. Knickerbocker Plaza Assocs.*,
    04 Civ. 3885, 2008 U.S. Dist. LEXIS 32047 (S.D.N.Y. Mar. 31, 2008) ..............21

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70 (2008) ..............................................................................12

*Saucier v. Katz*,
    533 U.S. 194 (2001)...............................................................................21

*Sheehan v. Purolator, Inc.*,
    839 F.2d 99 (2d Cir. 1988).........................................................................6

*Simon* v. *Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976)................................................................................19

*Matter of T-Mobile Northeast, LLC v. DeBellis*,
    143 A.D.3d 992 (2d Dep't 2016) .............................................................12

vi

**Cases**                                                                                          **Pages**

*Taylor v. Santana,*
    2007 U.S. Dist. LEXIS 18438 (S.D.N.Y. Mar. 6, 2007) ......................................................22

*Tenenbaum v. Williams,*
    193 F.3d 581 (2d Cir. 1999)..................................................................................................21

*Town of Aurora v Vil. of E. Aurora,*
    32 N.Y.3d 366 (2018) ..........................................................................................................12

*United States v Paredes,*
    185 F. Supp. 3d 287 (E.D.N.Y. 2016) ..................................................................................11

*Warth* v. *Seldin,*
    422 U.S. 490 (1975)..............................................................................................................19

*Washington v. Wyman,*
    54 FRD 266 (S.D.N.Y. 1971) ...............................................................................................18

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990)..............................................................................................................20

*Young v. New York,*
    11-CV-00110, 2012 U.S. Dist. LEXIS 180286 (E.D.N.Y. Dec. 20, 2012) ............................14

**Statutes**

CPL § 120.50 .................................................................................................................................9

CPL § 150.20 ............................................................................................................................8, 18

CPL § 150.20(1)(a) .......................................................................................................................7

CPL § 150.20(1)(b) .......................................................................................................................7

CPL § 150.20(1)(b)(vii) ............................................................................................................7, 18

CPL § 160.50 .................................................................................................................................9

CPL § 200.20 ...............................................................................................................................10

Fed. R. Civ. P. § 12(b)(1)...........................................................................................................1, 4

Fed. R. Civ. P. § 12(b)(6).............................................................................................................4

Fed. R. Civ. P. § 12(c) .............................................................................................................1, 4, 5

Fed. R. Civ. P. § 23..................................................................................................................1, 6

**<u>Other Authorities</u>**                                                    **<u>Pages</u>**

Fed. R. Civ. P. § 23(a) ................................................................6

Highway Law § 290 ...............................................................15, 16

Highway Law § 290(3) ...............................................................15

Penal Law § 215.56 .....................................................................9

Penal Law § 265.03 ..................................................................8, 9

§ 1983 ..................................................................................22, 23

VTL § 70(5) ..............................................................................16

VTL § 510 ................................................................................16

VTL § 1192 ...........................................9, 11, 12, 14, 15, 16, 17

VTL § 1192(1) ..............................2, 3, 7, 8, 9, 10, 11, 13, 14, 17, 20

VTL § 1192(2) ...........................................................10, 12, 14, 17

VTL § 1192(3) ................2, 3, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 20

VTL § 1192(4) ............................................................................10

VTL § 1193 ...................................................................9, 10, 11, 12

VTL § 1193(1)(a) .......................................................3, 10, 11, 13

VTL § 1193(1)(b) ..........................................................................3

VTL § 1193(1)(b)(i) ................................................................10, 12

VTL § 1193(2)(b) ........................................................................13

VTL § 1193(2)(b)(2) ....................................................................11

VTL § 1193(2)(e)(7) ...........................................................11, 13, 14

VTL § 1194 ..................................................................................9

VTL § 1194(2) .............................................................................17

VTL § 1195(1) .............................................................................17

Bill Jacket, L 1941, ch 726 .........................................................16

**<u>Cases</u>**                                                                                         **<u>Pages</u>**

Ch. 522, § 1 [1958] Laws of N.Y. 1275) ....................................................................16

Ch. 775, § 510, [1959] Laws of N.Y. 1979 ...............................................................16

Ch. 775, § 2015 [1959] Laws of N.Y. 2043) .............................................................16

1 H. Newberg, *Newberg on Class Actions* §§ 2.9 (4th ed. 2002) ............................19

L. 1910, ch. 374, s 290, subd. 3 ...............................................................................15

L. 1929, ch. 54 .........................................................................................................16

L. 1960, ch. 184, s 1 ................................................................................................17

L. 1970, ch. 275 .......................................................................................................17

New York, 3 Hofstra L. Rev. 541, 543 ......................................................................15

## PRELIMINARY STATEMENT

In their proposed class action complaint, Plaintiffs Dewayne McQueen and Ray Cedeno (the "Plaintiffs") allege that Defendants violated their rights under state and federal law when they were detained—at a precinct station house and later at Central Booking—from the time of their arrest until their arraignment on criminal charges that they were operating a motor vehicle while intoxicated. Plaintiffs claim that recent amendments to the Criminal Procedure Law (CPL) make it mandatory that arrestees charged with certain alcohol-related offenses of the Vehicle and Traffic Law (VTL) be issued a Desk Appearance Ticket (DAT), instead of being detained prior to their arraignment. They purport to seek relief on behalf of a class of allegedly similarly-situated individuals. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (FRCP), Plaintiffs have moved the Court to certify a class that includes: "All DUI-suspects in New York City who agreed to blow into a Breathalyzer, blew under the legal limit of 0.08 BAC, and were nevertheless denied a DAT by the arresting officer." *See* Plaintiffs 'Memorandum of Law in Support of their Motion for Class Certification ("Pltfs 'Memo"), Dkt. No. 15, Ex. 1, p. 3.

Defendants now move pursuant to FRCP 12(b)(1) and 12(c) to dismiss the Complaint ("Compl.", Dkt No. 1) in its entirety. Plaintiffs fail to state a claim upon which relief may be granted because, contrary to their allegations, neither Plaintiff was required to be issued a DAT in light of the combinations of offenses of which they were charged. Furthermore, Plaintiffs lack standing to seek the relief requested in the Complaint because neither Plaintiff suffered the injury that was purportedly suffered by the members of the proposed class; accordingly, the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims. For those same reasons, the instant application to certify the proposed class must be denied, because Plaintiffs are unable to demonstrate that either of them adequately represents the proposed class.

In brief, both Plaintiffs were charged with two alcohol-related offenses:

(1)     VTL § 1192(1) ("Operating a Motor Vehicle while Impaired by Alcohol," "Driving While Ability Impaired," or "DWAI"); and

(2)     VTL § 1192(3) ("Operating a Motor Vehicle while Intoxicated," "Driving While Intoxicated," or "DWI").[1]

While there is no dispute that recent amendments to the CPL now require that individuals who are charged *solely* with the offense of DWAI be issued a DAT (unless another DAT disqualifying factor exists), the law does *not* require that individuals charged with DWI be afforded the same benefit.[2]

As discussed more fully below, Defendants' motion should be granted and Plaintiffs' Complaint should be dismissed because (1) Plaintiffs fail to state a claim because the documents that Plaintiffs relied upon when drafting the Complaint and submitted in support of their motion for class certification show that Plaintiffs did not suffer a violation of any right; (2) Plaintiffs did not suffer an injury sufficient to confer standing and so neither are proper representatives of the proposed class, since they were both charged with alcohol-related offenses *in addition* to DWAI which permitted NYPD to lawfully detain both Plaintiffs up to and until their arraignment on those charges, instead of issuing them DATs. Additionally, (3) Defendants Officer Ruotolo and Officer Eltabib are both entitled to qualified immunity, and (4) NYPD Commissioner Dermot Shea should be dismissed from the case because Plaintiffs have not sufficiently alleged his personal involvement in any deprivation of Plaintiffs' rights.

---

[1] While Plaintiffs' Complaint is silent with respect to the charge of 1192(3), it is undisputed that both Plaintiffs were charged with both of these alcohol–related offenses. *See* Exhibits A, B, C, and D to the Declaration of Alexander Klein (Klein Decl.).

[2] The most recent version of Patrol Guide section 208-81 "Desk Appearance Ticket—Disqualifying Factors", which codifies NYPD policy on this issue, can be found online at https://www1.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide2.pdf at p. 179.

## RELEVANT FACTS AND PROCEDURAL POSTURE

Plaintiff DeWayne McQueen was arrested on January 11, 2020 at approximately 3:40 a.m. by NYPD police officer Peter Ruotolo, who observed Mr. McQueen operating a motor vehicle on West 19th Street while slumped over the steering wheel. Officer Ruotolo further observed that Mr. McQueen had watery bloodshot eyes, appeared disoriented, smelled of alcohol, and stated that he had been drinking during the previous half hour. Mr. McQueen was charged with "Operating a Motor Vehicle while Intoxicated" (VTL § 1192(3)) (a misdemeanor crime), and Operating a Motor Vehicle while Impaired by Alcohol (VTL § 1192(1)) (a traffic infraction, if charged as a first offense). *See* VTL 1193(1)(a); 1193(1)(b). Plaintiff McQueen does not allege that there was a lack of probable cause for his arrest. *See* Compl., p. 16, n. 7. Mr. McQueen's blood alcohol content was tested and measured at .076 of one per centum. He was arraigned in the New York County Criminal Court of the City of New York pursuant to a misdemeanor criminal complaint. *Id*. Ex. B.

Plaintiff Ray Cedeno was arrested on February 1, 2020 at approximately 12:17 a.m. by NYPD police officer Omar Eltabib, who observed Mr. Cedeno operating a motor vehicle at 168th Street and Riverside Drive while intoxicated. Officer Eltabib further observed that Mr. Cedeno smelled strongly of alcohol, had a flushed face, a talkative demeanor and watery bloodshot eyes, and who stated that he had been drinking. *Id*. at Ex. D. Mr. Cedeno was charged with "Operating a Motor Vehicle while Intoxicated" (VTL § 1192(3)) (a misdemeanor crime), and Operating a Motor Vehicle While Impaired by Alcohol (VTL § 1192(1)) (a traffic infraction, if charged as a first offense). *See* VTL 1193(1)(a); 1193(1)(b). Plaintiff Cedeno does not allege that there was a lack of probable for his arrest. *See* Compl. p. 16, n. 7. Mr. Cedeno's blood alcohol content was tested and measured at .077 of one per centum. *See* Klein Decl. Ex. E. Contrary to Plaintiffs' assertion in their Memorandum of Law, this blood alcohol content is not

3

"below the legal limit." *See* Plfts' Memo at p. 2. Plaintiff Cedeno was arraigned in the New York County Criminal Court of the City of New York pursuant to a misdemeanor criminal complaint. *Id*. Ex. D.

## STANDARD OF REVIEW

### FRCP 12(b)(1), 12(b)(6), and 12(c)

"A case is properly dismissed . . . under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). Under Rule 12(b)(6), a case may be dismissed when it fails to "state a claim to relief that is plausible on its face." *Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

However, the standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, 12(b)(6) for failure to state a claim, and Rule 12(c) for judgment on the pleadings are substantively "identical." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999); *see also Hogan v. Fischer*, 738 F.3d 509, 514-515 (2d Cir. 2013). On such a motion, the court accepts the complaint's factual allegations as true and construes all reasonable inferences in the nonmoving party's favor. *See Littlejohn v. City of N.Y.,* 795 F.3d 297, 306 (2d Cir. 2015). A motion to dismiss should be granted if the complaint fails to plead sufficient facts to "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To be considered plausible, a claim must "allow the court to draw the reasonable inference that the defendant is liable." *Id.* When a complaint's factual allegations only permit the court "to infer . . . the mere possibility of misconduct," a plaintiff fails to show entitlement to relief. *Id.* at 679. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported

4

by mere conclusory statements," will not meet the pleading standard. *Id.* at 678. Speculative and conclusory allegations as well as "legal conclusions masquerading as factual conclusions" are insufficient to defeat a 12(c) motion. *See Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 127 (2d Cir. 2019) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006)).

At the same time, a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 463 (S.D.N.Y. 2009) (internal alterations and quotation marks omitted). An allegation that lacks a factual basis is merely "a conclusory allegation masquerading as a factual conclusion, which is insufficient to defeat a motion to dismiss." *LaMagna v. Brown*, 474 F. App'x 788, 790 (2d Cir. 2012) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006)). In sum, when a plaintiff's allegations are insufficient to "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Livermore v. City of New York*, 08-CV-4442, 2011 U.S. Dist. LEXIS 4763, at *14 (S.D.N.Y. Jan. 13, 2011) (quoting *Twombly*, 550 U.S. at 570).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); see also *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("a court may consider 'matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit'").

**FRCP 23**

Plaintiffs moving for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure must satisfy four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see, e.g., In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006); *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999), *abrogated in part on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006). On a motion for class certification, the moving party bears the burden of proving that all of the requirements of Rule 23 are met. *McNeill v. New York City Housing Authority,* 719 F. Supp. 233, 252 (S.D.N.Y. 1989). Thus, a representative party may sue on behalf of putative class members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; an (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The purpose of Rule 23 is to "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (*quoting Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980)). Thus, satisfaction of Rule 23(a)'s requirements cannot be presumed; rather, trial courts must conduct a "rigorous analysis" to determine whether plaintiffs have met their burden. *Id.* at 160-61; *see also, e.g., In re IPO*, 471 F.3d at 33; *Sheehan v. Purolator, Inc.,* 839 F.2d 99, 103 (2d Cir. 1988).

## ARGUMENT

## POINT I

**PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE BOTH PLAINTIFFS WERE CHARGED WITH VTL 1192(3), FOR WHICH ARREST AND DETENTION UP-TO AND UNTIL ARRAIGNMENT IS IN ALL RESPECTS LEGAL AND PROPER.**

Neither Plaintiff adequately pleads a violation of their federal or state due process rights because both were charged with an offense for which arrest and detention up-to and until their arraignment was legal and proper. This much is clear from an analysis of the plain text and the legislative history of the relevant statutes.

### A. The Criminal Procedure Law is Unambiguous by its Plain Terms that Certain Offenses are Exempted from the DAT Requirement.

Recent amendments to the Criminal Procedure Law (CPL) now make it mandatory for police to issue a DAT when an individual is charged with certain offenses. *See* CPL 150.20(1)(a). The amendment is unambiguous that an officer is not required to issue a DAT under certain clearly-defined situations. *See id.* 150.20(1)(b). One such situation is when a "person is charged with a crime for which the court may suspend or revoke his or her driver license." *See id.* 150.20(1)(b)(vii). The misdemeanor crime of Driving while Intoxicated (VTL 1192(3)), is "a crime for which the court may suspend or revoke his or her driver license"; accordingly, this crime is "DAT-exempted" under CPL 150.20(1)(b)(vii), and Plaintiffs were not required to be issued a DAT upon their arrest. Simply because Plaintiffs were *also* charged with the lesser offense of Driving while Ability Impaired (VTL 1192(1)) does not entitle them to the issuance of a DAT.

7

Plaintiffs' apparent interpretation of the newly amended law is that an individual charged with VTL 1192(1)—even if charged with an additional or more serious offense—are nonetheless entitled to the issuance of a DAT, instead of being arrested and arraigned. That cannot be so, since that reading of the statute would result in absurd outcomes that the legislature could not have intended. It would mean that individuals charged with felonies (such as VTL 1192(3)) which is expressly exempted by the statue from the DAT requirement, would nonetheless be entitled to receive a DAT, and be sent on their way until a future court appearance. *See* CPL 150.20 (exempting class A, B, C, and D felonies, in addition to other specifically enumerated offenses, from the DAT requirement). Indeed, the arrest data for the period of January 1, 2020 through February 13, 2021, disclosed by Defendants and attached to the Klein Declaration as Exhibit I, demonstrates that drivers are frequently charged with VTL 1192(1) in combination with other, more serious, offenses.

Plaintiffs' color-coded organization of the arrest data and their summary table purporting to identify 690 individuals who make up the proposed class make plain that Plaintiffs' interpretation of the law is incorrect. *See* Klein Decl. Ex. J, K. Plaintiffs divide the proposed class members in to three categories: (1) arrestees charged with VTL 1192(1) and no other *alcohol-related* offenses (color-coded green); (2) arrestees charged with 1192(1) and 1192(3) (color-coded yellow); and (3) arrestees charged with 1192(3) and no other *alcohol-related* offenses. *See id.* Ex. K. But Plaintiffs overlook that the majority of these individuals were charged with additional offenses. Under their interpretation of the Criminal Procedure Law, individuals charged with these more serious offenses would be *required* to receive a DAT, regardless of the severity of the additional charge. *See e.g. id.* at p. 60, Arrest No. B21603662 (charged with VTL 1192(3) and Penal Law (PL) 265.03—criminal possession of a loaded

8

firearm, a class C felony); p. 122, Arrest No. K20624227 (same, among additional charges); p. 177, Arrest No. K21603236 (same); p. 179 Arrest No K21603796 (charged with VTL 1192(1), VTL 1192(3) and PL 265.03); p. 195, Arrest No. M20606774 (same); p. 384 Arrest No. S20605321 (charged with VTL 1192(1), VTL 1192(3), and PL 215.56—bail jumping, specifically DAT exempted by CPL 120.50).

While Plaintiffs do not include the individual identified by Arrest No. S20605321 as a potential class member (because that person was also charged with VTL 1194 for refusing to take a breath test, which Plaintiffs acknowledge is a DAT-exempted charge), the fact that there are individuals with *multiple* DAT-exempted charges, who were also charged under VTL 1192(1), further supports Defendants' interpretation of the law. In sum, Plaintiffs' argument that a charge of 1192(1) *necessarily* requires the issuance of a DAT, regardless of whether an individual is charged with an additional, non-alcohol-related, DAT-exempted offense, cannot be correct.

A more sensible interpretation of the amendments to the Criminal Procedure Law as they relates to the allegations in the Complaint is that the legislature intended to require issuance of a DAT only where a driver is charged *solely* with the alcohol related offense of VTL 1192(1). Indeed, that charge *alone* is not a crime for which a driver's license can be revoked or suspended. *See* CPL 160.50; VTL 1193; fn 2 *supra*. The problem for Plaintiffs is that neither Mr. McQueen not Mr. Cedeno were charged with this offense alone. This is fatal to their Complaint for the reasons discussed herein.

**B.    New York's Vehicle & Traffic Law classifies § 1192(3) as a misdemeanor for which the court may suspend or revoke a license.**

Subdivision 3 of VTL § 1192 provides that "[n]o person shall operate a motor vehicle while in an intoxicated condition." VTL § 1192(3). "[I]ntoxication is a greater degree of

impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *People v. Cruz*, 48 N.Y.2d 419, 428 (1979). A criminal defendant may be convicted of DWI even if defendant's blood alcohol level does not exceed statutory limit set forth in VTL § 1192(2)). *See People v. Carvalho*, 174 A.D.2d 687, 688 (2d Dep't 1991). Thus, Plaintiffs 'assertion in their Memo that a BAC under .08 is within the legal limit for operating a motor vehicle is misleading and incorrect. *See* Pltfs ' Memo at p. 2; *Carvalho* at 688. Furthermore, there is no requirement that police or prosecutors apply only a single section of the VTL for an alcohol-related offense. *See People v Rudd*, 41 AD2d 875, 875-876 [3d Dept 1973]) (citing CPL 200.20) ("To suggest that the People should be compelled to elect between the two counts [of VTL 1192(2) and 1192(3)] at any stage of the criminal proceedings would run counter to the intention of the Legislature which has determined that the social evil in question warrants separate offenses. Two offenses may be joined in one indictment when they are based upon the same act or upon the same criminal transaction."); *People v McKenzie*, 52 Misc 3d 1217[A], 2016 NY Slip Op 51187[U], *4 (Crim Ct, Kings County 2016) (BAC of .038 combined with officer's observation of a driver's red, watery eyes and smell of alcohol (among other indications) was legally sufficient to support the charges of VTL 1192(1) and 1192(3)).

       VTL 1193, which defines the criminal sanctions for §§ 1192(1)-(4) violations, states that a violation of § 1192(3) "shall be a *misdemeanor* and shall be punishable by a fine of not less than five hundred dollars nor more than one thousand dollars, or by imprisonment in a penitentiary or county jail for not more than one year, or by both such fine and imprisonment." VTL 1193(1)(b)(i) (emphasis added). By contrast, 1193(1)(a) provides that driving while ability

impaired in violation of § 1192(1) "shall be a *traffic infraction*." VTL 1193(1)(a) (emphasis added). If a defendant is found guilty of committing DWI under 1192(3), that motorist's driving privileges are to be revoked for six months. VTL 1193(2)(b)(2)).

Section 1193 further mandates that "a court shall suspend a driver's license, pending prosecution, of any person charged with a violation of subdivision two, two-a, three or four-a of section eleven hundred ninety-two of this article who, at the time of arrest, is alleged to have had .08 of one percent or more by weight of alcohol in such driver's blood as shown by chemical analysis of blood, breath, urine or saliva." VTL 1193(2)(e)(7). While not every individual who is charged with 1192(3) will record a BAC of .08 or higher, this provision further highlights that the legislature clearly contemplated procedures, both pre- and post-conviction, where a court *shall* suspend or revoke an individual's license for violating § 1192(3).

## C. New York state and federal case law recognizes DWI under 1192(3) as a crime.

Many courts have recognized VTL 1192(3) as a crime, distinct from 1192(1), an infraction. *See, e.g.*, *United States v Paredes*, 185 F. Supp. 3d 287, 294 (E.D.N.Y. 2016) (citing *People v. Kapsuris*, 89 Misc. 2d 634, 392 (Cty. Ct., Erie Cty. 1976) ("Section 1192(1), defining driving while ability impaired, defines a violation and not a crime; Section 1192(3), defining driving while intoxicated, defines a crime."); *People v. Litto*, 8 N.Y.3d 692, 705 (2007) ("[T]he scheme of section 1192 provides for different levels or kinds of proof to establish violations of the statute. Thus, a prosecutor must show impairment by alcohol to prove a violation of subdivision 1—resulting in a traffic infraction. Subdivision 1 is a lesser-included offense of subdivisions 2 and 3. Subdivisions 2 and 2–a require a showing of a specific amount of blood alcohol content to result in a per se criminal violation, whereas subdivision 3—"in an intoxicated condition"—allows for a circumstantial showing of inability to operate a motor vehicle while

11

under the influence of alcohol."); *People v. Miller*, 199 A.D.2d 692 (3rd Dep't 1993), *appeal denied* 82 N.Y.2d 92 ("Vehicle and Traffic Law § 1192(2) and § 1192(3) are separate crimes having distinct elements, namely 1192(2) is based upon a defendant's blood alcohol content while 1192(3) is based upon the manner defendant operated his vehicle and his condition.").

    D.    **The legislature intended to make 1192(3) DWI a crime for which the court may suspend or revoke a driver's license.**

Both the plain-text meaning and the legislative history of the statute make clear that VTL 1192(3) is a crime for which the court may suspend or revoke a driver's license. Accordingly, both Plaintiffs were lawfully arrested and detained until the time of their arraignment on this charge.

    1.    **When considered together, the plain meaning of § 1192 and § 1193 is unambiguous.**

When presented with a question of statutory interpretation, a court must "ascertain and give effect to the intention of the Legislature." *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 77-78 (2008); *see also Matter of T-Mobile Northeast, LLC v. DeBellis*, 143 A.D.3d 992, 994 (2d Dep't 2016). The New York Court of Appeals has long maintained that because "the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Majewski v. Broadalbin-Perth Cent. School Dist.*, 91 N.Y.2d 577, 583 (1998); *see also Town of Aurora v Vil. of E. Aurora*, 32 N.Y.3d 366, 372 (2018). Moreover, a statute "must be construed as a whole and . . . its various sections must be considered together and with reference to each other." *Matter of New York County Lawyers 'Assn. v Bloomberg*, 19 N.Y.3d 712, 721 (2012).

Here, VTL §§ 1192 and 1193, when considered together, are unambiguous. While § 1192(3) only states that "[n]o person shall operate a motor vehicle while in an intoxicated condition," and does not qualify such a prohibition as a crime, § 1193(1)(b)(i) makes direct

reference to § 1192(3), stating "[a] violation of subdivision . . . three . . . of section eleven hundred ninety-two of this article shall be a misdemeanor." When considered with reference to one another, the statutory text is clear: the Legislature classifies § 1192(3) as a misdemeanor. Whether in the legal field or in common usage, a misdemeanor, historically and in the present day, has always been considered a crime, though a crime of lesser seriousness compared to a felony. Black's Law Dictionary notes: "'crimes 'and 'misdemeanors, 'which, properly speaking, are mere synonymous terms; though, in common usage, the word 'crimes 'is made to denote such offenses as are of a deeper and more atrocious dye; while smaller faults and omissions of less consequence are comprised under the milder term of 'misdemeanors.'" Black's Law Dictionary (2d ed. 1910). It is even clearer that § 1192(3) is a crime when read in contrast to § 1192(1), which the Legislature labeled a "traffic infraction." VTL 1193(1)(a).

Furthermore, the statutory text explicitly provides that § 1192(3) is a crime for which a license may be suspended or revoked, both pre- and post-conviction. First, § 1193(2)(b) states, "[a] license shall be revoked and a registration may be revoked for . . . [s]ix months, where the holder is convicted of a violation of subdivision . . . three . . . of section eleven hundred ninety-two of this article." VTL § 1193(2)(b). It also contemplates pre-conviction suspension via § 1193(2)(e)(7): "a court shall suspend a driver's license, pending prosecution, of any person charged with a violation of subdivision . . . three . . . of section eleven hundred ninety-two of this article who, at the time of arrest, is alleged to have had .08 of one percent or more by weight of alcohol in such driver's blood as shown by chemical analysis of blood, breath, urine or saliva." VTL § 1193(2)(e)(7).

No court, state or federal, has discussed – or disagreed with – the plain meaning of these sections other than (1) to distinguish between the words "intoxication" in § 1192(3) and

13

"impaired" in VTL § 1192(1) or (2) to determine whether "intoxication" includes intoxication by anything other than alcohol. *See, e.g., Litto*, 8 N.Y.3d at 697; *Cruz*, 48 N.Y.2d at 424. Instead, courts have given effect to the plain meaning of the statute and revoked a motorist's driving privileges if convicted of § 1192(3) or suspended the driver's license pre-conviction pursuant to § 1193(2)(e)(7). *See, e.g.*, *Young v. New York*, 11-CV-00110 (JFB), 2012 US Dist. LEXIS 180286, at *16-17 (E.D.N.Y. 2012); *People v. Argyris*, 24 N.Y.3d 1138, 1150 (2014); *In re Plante*, 7 A.D.3d 98, 99 (2d Dept. 2004); *People v. Busby*, 175 Misc. 2d 509, 512 (2d Dept. 1997) (holding that "a driver's license suspension pursuant to Vehicle and Traffic Law § 1193 (2)(e)(7) is a judicially ordered remedial civil sanction imposed pending, and as part of, the prosecution of a violation of Vehicle and Traffic Law § 1192 (2) or (3), which does not violate the Double Jeopardy Clause"); *People v. Gerstner*, 168 Misc. 2d 495, 500-501 (Sup Ct, Monroe Cty. 1996) ("Since it was the Legislature's manifest intent that, in addition to a suspension pending prosecution, one could be punished following a conviction under Vehicle and Traffic Law § 1192 (2) or (3), the defendant's double jeopardy rights have not been violated."). In sum, the relevant case law makes clear that VTL 1192(3) has consistently been treated as a crime for which a driver's license may be suspended, making it a DAT-exempted offense.

## 2. Section 1192's legislative history corroborates § 1192(3)'s plain meaning.

In addition to a statute's plain meaning, a court should "inquire into the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history." *Matter of Albany Law School v. N.Y. State Off. of Mental Retardation & Dev. Disabilities*, 19 N.Y.3d 106, 120 (2012).

The "[e]volution of the DWI statute generally demonstrates an increasing firmness on the part of the legislature" to punish those who drink and drive, both through fines and/or imprisonment and the revocation of his or her license. *See* King & Tipperman, The

Offense of Driving While Intoxicated: the Development of Statutory and Case Law in New York, 3 HOFSTRA L. REV. 541, 543; 545-46 (1975). As the Court of Appeals has remarked: "extensive documentation demonstrates . . . the legislative goal of strengthening the ability to prosecute for driving in an intoxicated condition." *Litto*, 8 N.Y.3d at 700.

The first statute to prohibit driving while "in an intoxicated condition" was passed by the Legislature in 1910. *See* L.1910, ch. 374, s 290, subd. 3; *see also* King & Tipperman, *supra* at 544. Section 290 of the Highway Law provided in relevant part: "Whoever operates a motor vehicle while in an intoxicated condition shall be guilty of a misdemeanor." L.1910, ch. 374, s 290, subd. 3. The statute provided that the first conviction of a violation of § 290(3) constituted a misdemeanor and the second a felony, irrespective of how long it occurred after the first. *Id.* Notably, the enactment also contained a provision for immediate suspension of the operator's license if convicted and no appeal taken. *Id.* The act set no statutory period for the length of such suspension, but merely required that the privilege shall not be restored "unless the Secretary of State, after an investigation or upon a hearing, decides to reissue or issue such license or certificate." *Id.* Convictions under § 290(3), like § 1192(3), were based solely on the defendant's conduct and demeanor at the time of the arrest. *Cruz*, 48 N.Y.2d at 424.

While the statute prohibiting driving while in an intoxicated condition has been repeatedly changed and refined, the Court of Appeals has noted that, over the last century, "the goal of removing from the road those who drive while intoxicated" has not changed. *Litto*, 8 N.Y.3d at 693 2007. Moreover, "the prohibition of driving while intoxicated under subdivision 3 of section 1192 is part of the strategy to prevent the 'drinking driver' from using the roadways." *Id.* at 695-96.

15

In 1929, Section 290 became part of the Vehicle and Traffic Law. *See* § 70(5) of the Vehicle and Traffic Law of 1929, added by L. 1929, ch. 54. In 1941, after years of debate, the Legislature amended the law to permit the admission of tests for BAC at trial.[3] L. 1941, ch 726. "Except for adding motorcycles, the prohibition against driving while intoxicated used the exact language as in 1910, and included a statement that evidence of the amount of alcohol in the blood from a test taken within two hours of arrest was admissible to prove intoxication." *Litto*, 8 N.Y.3d at 699.

In 1959, the Legislature reorganized the Vehicle and Traffic Law of 1929 and enacted a re-codified version. *See* King & Tipperman, *supra* at 559 (citing Ch. 775, § 2015 [1959] Laws of N.Y. 2043). Importantly, "[t]he substantive provisions of the prior statute remained unchanged." *Id.* As a result, driving while intoxicated remained a misdemeanor as a first offense and "was elevated to a felony where the driver had a previous DWI conviction." *Id.* "Punishment for the felony was sixty days to two years imprisonment and/or a fine of $200 to $2000." *Id.* Moreover, the "revocation and suspension provisions of the predecessor statute were incorporated in section 510 of the new Vehicle and Traffic Law of 1959." *Id.* (citing Ch. 775, § 510, [1959] Laws of N.Y. 1979 (formerly codified as N.Y. Veh. & Traf. Law § 510), amending ch. 522, § 1 [1958] Laws of N.Y. 1275). "Mandatory revocation of a driver's license was prescribed where the licensee was convicted of violating section 1192 (DWI). No new license could be issued to a convicted motorist for at least six months." *Id.* (internal footnote omitted).

---

[3] The legislative history of the 1941 amendment substantiates the legislature's intent to deter drinking and driving and punish those who do through successful, evidence-based prosecutions. *Id.* Dutton S. Peterson, the sponsor, wrote to the Governor: "Since this bill has been approved by the highest medical authority, The American Medical Association, bar associations, police organizations, civic organizations, and automobile clubs, and because of the need for a further curb on the drinking driver, I urge that you sign this bill." *Id.* (quoting Letter from Assembly Sponsor, Apr. 19, 1941, Bill Jacket, L 1941, ch 726, at 39).

16

In 1960, the legislature revised section 1192, the basic DWI provision, to introduce a new, lesser offense: driving "while ability is impaired by the consumption of alcohol." (L.1960, ch. 184, s 1). *See Cruz*, 48 N.Y.2d at 424. "The Legislature added section 1192(1) to assure that not all drivers who were under the influence of alcohol would be criminally liable." *Litto*, 8 N.Y.3d at 706 (evidencing the Court of Appeals' acknowledgment that violating § 1192(1) is an infraction, whereas violating sections 1192(2) and 1192(3) are crimes). Still, the DWI provision's language remained intact.

In 1970, the legislature again added a new provision titled "Driving while intoxicated; per se," which made it a misdemeanor to drive with a blood alcohol content of .15% or more. *See* L. 1970, ch. 275. With this amendment, "[t]he 'impaired ability' continued to be subdivision 1, the new per se provision became subdivision 2, the 'driving while intoxicated' provision became subdivision 3, and the 'drug impairment' provision became subdivision 4." *Litto*, 8 N.Y.3d at 703 n.5 (2007). This amendment also removed the requirement that impairment could only be established by scientific proof showing a specific blood alcohol content. *See* L.1970, ch. 275; *see also Cruz,* 48 N.Y.2d at 424-25 ("Now, whether the defendant is charged with driving while intoxicated or driving while impaired by alcohol, scientific evidence of blood alcohol content, although admissible (Vehicle and Traffic Law, s 1195, subd. 1), is not essential. Since the defendant's consent is required for any blood alcohol analysis (Vehicle and Traffic Law, s 1194, subd. 2), the present statutory scheme serves to prevent the defendant from defeating a criminal prosecution for either offense by simply refusing to take the test."). Therefore, "[e]xcept for changes in the blood alcohol levels, the statute remains substantially unchanged to the present. In other words, the '*driving while intoxicated' provision*

17

contains essentially the same language as the provision passed by the legislature in 1910." *People v. Grinberg*, 4 Misc. 3d 670, 676, 781 (Kings Cty, Crim. Ct. 2004) (emphasis added).

Through this legislative history, dating back to 1910, it is clear the New York Legislature intended to punish those who drive while in an intoxicated condition, through fines and/or imprisonment, in addition to revocation of his or her license. While the specific sanctions may have been slightly altered and updated, the statute has remained substantively unchanged. Moreover, the law's purpose has not faltered. It is evident that § 1192(3) is "a crime for which the court may suspend or revoke his or her driver license;" thus, it is DAT-exempt under CPL § 150.20(1)(b)(vii).

In sum, since it is clear that both the plain meaning and the legislative history of the statue support the proposition that 1192(3) is a crime for which a driver's license may be revoked or suspended, either before or after prosecution, and because CPL 150.20 specifically exempts these crimes from the requirement that a driver be issued a DAT, Plaintiffs fail to state a claim upon which relief may be granted. The fact that Plaintiffs have styled this action as a proposed class action does not salvage Plaintiff's' claims, since a plaintiff whose allegations do not state a cognizable claim cannot proceed as the lead plaintiffs in a class action lawsuit. *See Washington v. Wyman*, 54 FRD 266, 271-272 (S.D.N.Y. 1971) ("A plaintiff without a claim, should not, simply by making class action allegations, be allowed to bring suit."). Accordingly, since both Plaintiffs were charged with 1192(3), the Court should enter a judgment on the pleadings in favor of Defendants and the complaint should be dismissed, since Plaintiffs have not suffered any violation of their rights as a matter of law.

## POINT II

**PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE PLAINTIFFS LACK STANDING AND THEREFORE CANNOT SERVE AS ADEQUATE CLASS REPRESENTATIVES.**

While interrelated with the "commonality" and "typicality" inquiries involved in a class certification, standing is a threshold question, antecedent to class certification. *See Pub. Emples. Ret. Sys. v. Merrill Lynch & Co.,* 714 F. Supp. 2d 475, 480-481 (S.D.N.Y. 2010); 1 H. Newberg, *Newberg on Class Actions* §§ 2.9 (4th ed. 2002). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (*Lewis v Casey*, 518 US 343, 357 [1996] (quoting *Simon* v. *Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20 (1976) and *Warth* v. *Seldin*, 422 U.S. 490, 502, (1975))). It is therefore axiomatic that a plaintiff must have suffered the same injury as the class members s/he seeks to represent. *See East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (U.S. 1977) ("class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") (citations omitted). A litigant must have experienced an actual injury in fact vis-a-vis every claim in the complaint. *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("It is not enough that the conduct of which the plaintiff complains will injure *someone*…Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").

Furthermore, if there is no case or controversy, then Plaintiffs, and the proposed class they seek to represent, do not have standing "to seek forward-looking relief." *Adarand*

19

*Constructors, Inc. v. Pena,* 515 U.S. 200, 210 (1995). The proposed class representatives must have individual standing *at the time the class certification determination is made.* *Martens v. Thomann*, 273 F.3d 159, 173 (2d Cir. 2001). If none has standing, then none may seek relief on behalf of himself of any other member of the class. *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). (citation omitted). Standing to seek declaratory relief also requires that plaintiffs establish that there is a case and controversy, by showing the likelihood of future injury to them which is of "sufficient immediacy and reality." *L.A. v. Lyons*, 461 U.S. 95, 104 (1983), quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969).

Here, neither Plaintiff McQueen nor Plaintiff Cedeno can make the requisite showing to establish standing, which is their burden. This is evident when accepting as true all of the material allegations in the Complaint and in light of the records attached in support of Plaintiffs' motion for class certification. *See* Pltfs' Compl.; Klein Decl. Both Plaintiffs allege that they suffered a "wrongful detention" and that they and the members of the class all suffered the same injuries of the result of their shared experience of being charged with VTL 1192(1). *See* Compl. First and Third Causes of Action. But, as discussed above, assuming *arguendo* that any such viable claim exists, it could only be brought by an individual who was charged with 1192(1) and without an accompanying DAT-exempted charge. Here, it is clear from the records attached to Plaintiffs' motion that certain critical facts were omitted from the Complaint; namely, that both Plaintiffs were charged with VTL sections 1192(1) *and* 1192(3). Thus, while there are individuals who *may* have standing to serve as class representatives in an action akin to the instant one, Plaintiffs are not among them. Accordingly, the Complaint should be dismissed.

20

## POINT III

## DEFENDANTS RUOTOLO AND ELTABIB ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity shields government officials from suits seeking to impose personal liability for damages so long as "(1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." *Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999) (citation omitted); *see also Saucier v. Katz*, 533 U.S. 194, 20 (2001). The qualified immunity analysis "recognizes 'that reasonable mistakes can be made as to the legal constraints on particular [official] conduct.'" *Roffman v. Knickerbocker Plaza Assocs.*, 04 Civ. 3885, 2008 U.S. Dist. LEXIS 32047, at *17 (S.D.N.Y. Mar. 31, 2008) (quoting *Saucier* at 205).

Qualified immunity is afforded to officials performing discretionary functions: *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). A government official's actions are objectively unreasonable only "when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995). Thus, the qualified immunity defense extends "if officers of reasonable competence could disagree" on the appropriateness of the defendants' action, and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). This standard entails a two-step analysis: 1) a determination of whether there is an allegation of the violation of an actual constitutional right and 2) a determination of whether the right was clearly established at the time. *Id.*

Here, in light of the fact that both Plaintiffs were arrested within 30 days after the relevant amendments to the Criminal Procedure Law took effect, it seems clear that any alleged

21

right to be issued a DAT for driving while intoxicated could not yet have been clearly established. Indeed, there is no published case law interpreting the interplay of the specific provisions of the Criminal Procedure Law and the Vehicle and Traffic Law at issue in this case. Moreover, where lawyers can disagree about the proper interpretation of a statute and the rights conferred by it (which is the case here), then it logically follows that officers of reasonable competence would be unable to reach unambiguous consensus on the proper and lawful course of action under the factual scenario at bar, particularly without guidance from the Courts. *See Amore v Novarro*, 624 F3d 522, 533-534 (2d Cir 2010) ("The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct."). For these reasons, Defendants Officer Ruotolo and Officer Eltabib are entitled to qualified immunity.

### POINT IV

### DEFENDANT NYPD COMMISSIONER DERMOT SHEA HAD NO PERSONAL INVOLVEMENT IN THE ALLEGED VIOLATIONS.

As discussed in above, Plaintiffs have failed to state a viable claim that either suffered a due process violation. However, even if plaintiffs *had* established such a violation, the claims against defendant Shea should be dismissed because there is no plausible allegation that he had any personal involvement in the alleged violations of plaintiffs' rights. It is well established that a defendant's personal involvement in an alleged constitutional violation is a prerequisite to a finding of liability under § 1983. *See Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003); *Taylor v. Santana*, 2007 U.S. Dist. LEXIS 18438 (S.D.N.Y. Mar. 6, 2007). Where a plaintiff does not establish how a particular defendant was personally involved in any of the actions or inactions that led to the alleged deprivations of the plaintiff's constitutional rights,

dismissal as to that defendant is appropriate. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987); *McCoy v. Goord*, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003).

Here, the Complaint contains only bare assertions that Defendant Shea was personally involved in the purportedly illegal conduct. *See* Compl. ¶ 169. Plaintiffs fail to adequately plead what role Commissioner Shea allegedly played in the creation of any alleged illegal policy, which is fatal to these claims. Plaintiffs presumably include Commissioner Shea in the caption simply because he is the highest-ranking official within the NYPD, which Courts routinely reject as a basis for liability. *See Jefferson v. Kelly*, 06 CV 6616 (NGG) (LB), 2008 U.S. Dist. LEXIS 32954, at *8 (E.D.N.Y. Apr. 21, 2008) (dismissing § 1983 claims against [NYPD] Commissioner Kelly where plaintiff failed to allege that the Commissioner was personally involved in any of the plaintiff's alleged violations); *Edmonds v. Greiner*, 2002 U.S. Dist. LEXIS 3746, *4 (S.D.N.Y. Mar. 7, 2002) (complaint must contain allegations that defendant is "directly and personally responsible for the purported unlawful conduct"); *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 336-37 (S.D.N.Y. 1999) ("[Plaintiff] cannot maintain a § 1983 claim against the [NYPD] Commissioner on the theory that he as supervisor of the entire police department is vicariously liable for any alleged constitutional violation that occurs in that Department."). Accordingly, the claims against defendant Shea should be dismissed.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that they be granted a judgment in their favor on the pleadings, that Plaintiffs' Complaint be dismissed in its entirety, that Plaintiffs' motion for class certification be denied, and for such other relief as the Court deems just and proper.

Dated:        New York, New York
              August 9, 2021

GEORGIA M. PESTANA
Corporation Counsel of
 the City of New York
*Attorney for Defendants*
100 Church St., Rm. 2-106
New York, NY 10007
Office: 212-356-0871
Cell: 646-939-7439
mtoews@law.nyc.gov


By:        _____/s/ MGT_____
           Mark G. Toews
           Senior Counsel

24